# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black Apple iPhone<br>DEA SSEE S001645324<br>("Subject Device 1") | Case No. **24-mj-03688** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Possession of a Controlled Substance with Intent to Distribute |
| 21 USC Sec. 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dylan Boylan, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means)*.

Date: September 27, 2024

*Judge's signature*

City and state: San Diego, California    Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-1
## PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Apple iPhone
DEA SSEE S001645324
("**Subject Device 1**")

The **Subject Device** is currently in the possession of Drug Enforcement Administration, and located at 5810 Newton Drive, Carlsbad, California 92008.

# ATTACHMENT B
# ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **August 20, 2024,** up to and including **September 3, 2024**:

a. tending to indicate efforts to possess with intent to distribute fentanyl or other federally controlled substances;

b. tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of or possession with the intent to distribute fentanyl, or some other federally controlled substance, within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of or the possession with the intent to distribute fentanyl, or some other federally controlled substance, within the United States;

d. tending to identify travel to or presence at locations involved in the distribution of or possession with the intent to distribute fentanyl, or some other federally controlled substance, within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Subject Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

# AFFIDAVIT

I, Dylan Boylan, having been duly sworn, declare and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

    a. Black Apple iPhone
DEA SSEE S001645324
("**Subject Device 1**")

    b. White Samsung Phone
DEA SSEE S001645325
("**Subject Device 2**")

(collectively, the "**Subject Devices**") as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of 21 U.S.C. §§ 841(a)(1) and 846, as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Brooke Marie Russell ("RUSSELL") for possessing a mixture and substance containing a detectable amount of fentanyl with the intent to distribute said mixture and substance to another person. The **Subject Devices** are currently in the custody of the Drug Enforcement Administration, and located at 5810 Newton Drive, Carlsbad, California 92008.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining search warrants for the **Subject Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING AND EXPERIENCE

3. I am a Detective with the Escondido Police Department and have been so employed since February 2014. I am currently assigned as a Task Force Officer with the Integrated Narcotics Task Force (NTF) San Diego and have been so assigned since November 2020. I have been deputized by the Drug Enforcement Administration (DEA).

As such, I am an "Investigative or Law Enforcement Officer" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. During my law enforcement career, I have received formal training in narcotics investigations. I have participated in multiple separate investigations involving the importation and distribution of controlled substances. As part of these investigations, I have used various investigative techniques, including physical surveillance and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen registered/trap and trace devices, telephone toll analysis, undercover operations, search warrants and electronic examination of devices. Through these previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon.

5. Based on my training, experience and conversations with other law enforcement officers, I have gained a working knowledge of the operational habits of narcotics traffickers and the unique trafficking patterns employed by narcotics organizations. I am aware that it is common practice for drug traffickers to work in concert utilizing cellular telephones to maintain and store communications and related items with co-conspirators in order to further their criminal activities. I know that drug traffickers often require the use of a telephone to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and arranging the disposition of the proceeds from the sales of controlled substances. I know that professional drug operations depend on maintaining their extensive contacts. The telephone enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers. I also know that drug traffickers sometimes use fraudulent information, such as false names and addresses, to subscribe to communication facilities, especially cellular phones, and frequently use communication facilities to thwart enforcement efforts to intercept.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.  I am also aware that cellular telephones (including their SIM card(s)) and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone.  Specifically, searches of cellular telephones of individuals involved in the importation, transportation, and distribution of narcotics may yield evidence:

    a. tending to indicate efforts to possess with intent to distribute fentanyl or other federally controlled substances;

    b. tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of or possession with the intent to distribute fentanyl, or some other federally controlled substance, within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of or the possession with the intent to distribute fentanyl, or some other federally controlled substance, within the United States;

    d. tending to identify travel to or presence at locations involved in the distribution of or possession with the intent to distribute fentanyl, or some other federally controlled substance, within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Subject Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On September 2, 2024, investigators were conducting surveillance outside a residence suspected of possible drug distribution activity. They observed a black BMW with Arizona license plate BFF9990 arrive at the residence around 5:50 p.m., stay for about an hour, and drive away around 7:05 p.m.

8. Investigators determined that Brooke RUSSELL was the driver of the black BMW because the driver appeared to be the same person as in prior booking photos of Brooke RUSSELL. Investigators also determined that RUSSELL had two active felony arrest warrants.

9. At about 7:09 p.m., investigators directed San Diego Sheriff's Department ("SDSO") deputies to conduct a traffic stop of RUSSELL. Police Service Dog (PSD) Tiger conducted an open-air sniff of the vehicle and alerted to the presence of narcotics odor emanating from the vehicle.

10. The SDSO deputies searched the car and found, within an arm's reach of the driver's seat, approximately 95 grams of multi-colored fentanyl pills, 149 grams of blue fentanyl pills, approximately 61 grams of fentanyl powder, approximately 80 grams of methamphetamine, approximately 40 grams of crack cocaine, approximately 64 grams of cocaine, approximately 39 grams of trifluoromethylphenylpiperazine and approximately 154 grams of gamma-hydroxybutyrate. Based on my training, education, and experience, these are not drug amounts consistent with personal use; these drug amounts are consistent with distribution.

11. Also inside the car was a black backpack that included a debit card bearing RUSSELL's name and about $2,500 in cash. Based on my training and experience, this amount of cash is also consistent with drug distribution activities.

12. During a post-arrest search, officers found about 35 grams of white powder in a small bag concealed within RUSSELL's bra.

13. Deputies also located the black Apple iPhone (**Subject Device 1**) underneath a black backpack on the front passenger's seat and the white Samsung phone (**Subject Device 2**) near the vehicle's gear selector.

14. The **Subject Devices** were impounded at the Encinitas Sheriff's Station by TFO Kevin Norie and later transferred to the DEA Carlsbad Resident Office.

15. RUSSELL was the driver of the vehicle during the offense and had sole dominion and control of the items and property inside the vehicle, including the **Subject Devices**, at the time of the offense.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Subject Devices**. In light of the above facts and my experience and training, there is probable cause to believe that RUSSELL was using the **Subject Devices** to communicate with others to further the distribution of illicit narcotics within the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as a defendant, to attempt to minimize the amount of time they were involved in their trafficking activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Telephone for data beginning on **August 20, 2024**, up to and including **September 3, 2024**.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the black Apple iPhone (**Subject Device 1**) and white Samsung phone (**Subject Device 2**) and analyze both **Subject Devices**. All forensic analysis of the data contained within the **Subject Devices** and their respective memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

6

1  review, and, consequently, may take weeks or months. The personnel conducting the
2  identification and extraction of data will complete the analysis within ninety (90) days of
3  the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

20. Law enforcement has not downloaded **Subject Devices** to date. Law enforcement is seeking the instant warrant to obtain a full and comprehensive forensic download of the **Subject Devices**.

**CONCLUSION**

21. Based on all of the facts and information described above, my training and experience, and consultations with other law enforcement officers, I submit there is probable cause to believe that a search of the **Subject Devices** will yield evidence of RUSSELL's violations of 21 U.S.C. §§ 841(a)(1) and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_Dylan James Boylan_
Task Force Officer Dylan Boylan
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 27th of September, 2024.

_[signature]_
HON. MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE